**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

    **Plaintiff**,

             **v.**                **Criminal No.** 19-659 (FAB)

LUIS A. FLORENTINO-ROSARIO,

    **Defendant**.

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is defendant Luis A. Florentino-Rosario ("Florentino")'s motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33. (Docket No. 55.)  For the reasons set forth below, Florentino's motion, id., is **DENIED**.

**I.   Background**

    **A.   Factual Background**

In this section, the Court recounts the evidence consistent with the standard applicable to a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29.  Any differences pertinent to the Court's resolution of Florentino's alternative Rule 33 motion are discussed in the section dealing with that rule.

In reviewing a motion for judgment of acquittal, courts "consider[] the evidence in the light most favorable to the prosecution." United States v. Lara, 181 F.3d 183, 200 (1st Cir. 1999) (citations omitted). Rule 29 motions require a court to "take into account all evidence, both direct and circumstantial, and resolve evidentiary conflicts and credibility disputes in favor of the jury's verdict." United States v. Valerio, 676 F.3d 237, 244 (1st Cir. 2012). At the same time, the court "must 'reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative.'" United States v. Rodríguez-Martínez, 778 F.3d 367, 371 (1st Cir. 2015) (quoting United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995)).

In September 2019, Florentino was stopped at an airport in Puerto Rico. He had no documents or legal status to be in the United States. He had a passport from the Dominican Republic and told law enforcement authorities that he is a citizen of the Dominican Republic. Florentino admitted to law enforcement authorities that he entered the country illegally by sea. He had been in the United States for a couple months.

At the time, Florentino was given a document by United States law enforcement authorities stating that he is subject to expedited removal from the country because he did not have legal

status in the United States and entered without permission.  The
document further advised Florentino that he was banned from
entering the United States for five years.  Florentino acknowledged
at that time that he received the document.

Florentino was removed from the United States to the
Dominican Republic on the same day he was arrested in September
2019.

Approximately one month later, in October 2019, United
States law enforcement authorities stopped a boat off the west
coast of Puerto Rico headed towards Puerto Rico.  The boat was
interdicted roughly nineteen nautical miles from Puerto Rico.  The
boat was covered with a blue tarp, a tactic often used by drug
smugglers to hide from law enforcement.

Florentino and thirteen other people were on the boat.
Law enforcement considered that to be an excessive number given
the size of the boat and was concerned for the safety of the
fourteen individuals.  The people on the boat generally did not
respond to the authorities' questions, but one person on the boat
said the group had come from the Dominican Republic.

Florentino was arrested.  He confirmed to law
enforcement authorities that he is a citizen of the Dominican
Republic.  He further noted that he had previously been removed

from the United States, a fact the law enforcement authorities also discovered through investigation.

The law enforcement authorities investigated whether Florentino had a legal right to be in the United States.  They learned that there were no pending petitions to enter or remain in the United States.  Florentino confirmed that he had no such documents.  Florentino acknowledged that he had previously applied for a visa but had been denied.

Florentino also discussed with law enforcement authorities his purpose for being on the boat.  He said he was attempting to enter the United States.  Florentino knew that Puerto Rico is part of the United States.  He paid $2000 to get to the United States.  He also explained that he was attempting to come to the United States to look for work so that he could build a house in the Dominican Republic.  Florentino told law enforcement that he was going to Rio Piedras, Puerto Rico.

**B.   Procedural Background**

In October 2019, a grand jury charged Florentino with attempted reentry into the United States in violation of 8 U.S.C. section 1326(a).  (Docket No. 6.)

In December 2019, Florentino moved this Court for an order to the United States Citizenship and Immigration Services for production of Florentino's asylum petition.  (Docket No. 15 at

p. 1.)  According to the motion, the asylum petition was received by the federal agency in November 2019.  Id.  The Court granted the motion.  (Docket No. 16.)  The government was unable to locate a copy of the petition. (Docket No. 27.)  Florentino renewed his asylum petition in January or February 2020.  See Docket No. 36.

The government requested jury instructions.  (Docket No. 25.)  The requested instructions included the indictment, a copy of the text of 8 U.S.C. section 1326, and pattern instructions associated with section 1326.  Id.; see Nancy Torresen, 2019 Revisions to Pattern Criminal Jury Instructions for the District Courts of the First Circuit 78 (2019), available at http://www.med.uscourts.gov/pdf/crpjilinks.pdf (instruction 4.08.1326) [hereinafter "Pattern Instructions"].

Florentino also moved the Court for three jury instructions.  (Docket No. 36.)  One of these instructions provided that attempted reentry of the United States "is a specific intent crime in the sense that an 'attempt to enter' requires a subjective intent on the part of the defendant to achieve entry into the United States as well as a substantial step toward completing that entry."  Id., Ex. 1 at p. 1.  That language is taken directly from United States v. De León, 270 F.3d 90, 92 (1st Cir. 2001).  According to Florentino, the De León court broke with past precedent in the First Circuit which, he says, had held that

section 1326 does not require specific intent.  Id. at pp. 1–2
(citing United States v. Cabral, 252 F.3d 520, 524 (1st Cir. 2001);
United States v. Soto, 106 F.3d 1040, 1041 (1st Cir. 1997)).

Florentino's second-requested instruction highlighted
the mental states reflected in the Model Penal Code.  See id.,
Ex. 1 at p. 2.  Florentino asked the Court to instruct the jury
that "[t]he definition of 'intent' has been replaced with a
hierarchy of culpable states of mind," and that these four states
of mind are purpose, knowledge, recklessness, and negligence.  Id.
Florentino believed the instruction is supported by United States
v. Bailey, 444 U.S. 394, 404 (1980).  Id. at p. 2.  The instruction
would have also distinguished and defined the mental states of
"purpose" and "knowledge."  Id., Ex. 1 at p. 2.

The third instruction requested by Florentino would have
asked the jury to find whether Florentino was justified in
attempting reentry because of duress.  Id., Ex. 1 at p. 3.
Florentino characterized the instruction as "Justification: Self-
Defense, Duress, Necessity," see id., but the Court considers the
request as seeking a duress instruction because the instruction
tracks the elements of the duress defense, compare id., with United
States v. Lebreault-Feliz, 807 F.3d 1, 3–4 (1st Cir. 2015) (stating
elements of duress and necessity defenses).

The government moved to prevent Florentino from both introducing his asylum claim and presenting a duress defense at trial. (Docket No. 39.) According to the government, Florentino did not make a *prima facie* showing necessary for presentation of a duress defense. Id. at pp. 4-5. The government also raised the possibility of jury nullification should Florentino's asylum petition be entered into evidence. Id. at p. 5. Florentino opposed the motion, seeking to distinguish some of the caselaw on which the government relied and focusing on the meaning of the word "immediate." (Docket No. 44 at pp. 3-8.) Florentino asked the Court to not rule on the motion *in limine* until after he presented evidence at trial. Id. at p. 8. The Court granted the government's motion and precluded Florentino from introducing duress evidence at trial. (Docket No. 46.)

Florentino then objected to the Court's proposed jury instructions. (Docket No. 47.) According to Florentino's objection, the proposed instructions were deficient on the issue of *mens rea*. Id. at pp. 1-4. Unfortunately, however, the objection was inconsistent.

At certain points, Florentino's objection to the proposed jury instructions tracked his initial request for jury instructions. Florentino reiterated that the government should

have to prove a subjective intent to enter the United States,
stating,

> In this case, the jury should be clearly instructed on
> the element of "specific intent" which is the correct
> degree of *mens rea* required by the crime of attempted
> re-entry. Note: "Attempt," here as elsewhere, is a
> specific intent crime in the sense that an "attempt to
> enter" requires a subjective intent on the part of the
> defendant to achieve entry into the United States as
> well as a substantial step toward completing that entry.

Id. at pp. 1-2. He further emphasized that the jury instructions
should distinguish between purpose and knowledge. Id. at 2-3.

At other points, however, Florentino endorsed a
different view of section 1326. Florentino pointed to a decision
from the Ninth Circuit Court of Appeals holding that section 1326
requires the government to prove—not just an intent to enter the
United States, as in De León—an intent to illegally enter the
United States. Id. at p. 2 (citing United States v. Gracidas-
Ulibarry, 231 F.3d 1188, 1196 (9th Cir. 2000) (en banc)). In
accordance with this view of section 1326, Florentino said that
"[l]ack of intent based on his reason for seeking asylum are
matters for the jury to decide." Id. at p. 4.

The Court noted Florentino's objection. (Docket
No. 48.) The Court explained that the issue would be discussed at
the charging conference. Id.

Trial was held on February 24, 2020. (Docket No. 50.)

Before the trial began, the parties again argued about Florentino's requested jury instructions on specific intent and the introduction into evidence of his asylum petition. The government argued that the asylum petition was irrelevant to the section 1326 charge and merely an attempt to curry sympathy with the jury.

Florentino argued that his "whole defense" turned on whether he had the requisite specific intent to be convicted pursuant to section 1326. His arguments, however, were in conflict; once again, Florentino advocated for the instruction providing that section 1326 requires a specific intent to enter the United States even as he also contended that his reasons for seeking asylum negated that specific intent. He also seemed to confuse or elide the difference between intent and duress, arguing that asylum seekers do not usually have a specific intent to enter the United States but, rather, are forced to come by other reasons.

The Court refused to grant Florentino's requests both to admit his asylum petition as evidence and to instruct the jury in accordance with Florentino's requested specific intent instructions. The Court found that the asylum petition was irrelevant to the criminal case. The Court also noted that "it would seem . . . that if he requested asylum he did have intent." The Court explained that it would instruct the jury in accordance

with the pattern jury instructions as indicated in the proposed
instructions.

        The Court instructed the jury. (Docket No. 51.)  The
instructions included the pattern instruction associated with
section 1326. Id. at pp. 14–15; see Pattern Instructions at 78.
The instructions also indicated that to prove attempted reentry,
the government must prove, among other things, that "the defendant
intended to commit the crime of re-entering the United States
without permission from the United States' authorities after
having been previously removed from the United States." (Docket
No. 51 at p. 16.)  The Court also indicated that the government
had to prove the defendant engaged in a purposeful act amounting
to a substantial step toward commission of the crime and that
"[t]he 'substantial step' may itself prove the intent to commit
the crime, but only if it unequivocally demonstrates such an
intent." Id.  The Court's instructions further defined the words
"knowingly" and "intentionally," stating,

        The word "knowingly," as that term has been used from
        time to time in these instructions, means that the act
        was done voluntarily and intentionally and not because
        of mistake or accident.

        To act "intentionally" or "willfully" means to act
        voluntarily and intelligently and with the specific
        intent that the underlying crime be committed -- that is
        to say, with a bad purpose, either to disobey or
        disregard the law -- not to act by ignorance, accident
        or mistake.

<u>Id.</u> at p. 18.

　　　　After the jury was instructed, the defense reiterated
its objections.  Florentino took issue with the denial of his three
requested instructions.  He also protested the exclusion of his
asylum petition because, according to Florentino, the petition
would have proven his "duress and/or necessity related to the
entrance into the United States and his lack of specific intent."
Florentino emphasized that "[h]e came because of necessity and/or
duress, and it was not his specific intent to violate the law."

　　　　Florentino did not present evidence during the trial.
He also did not make an opening or closing argument.

　　　　The jury found Florentino guilty.  (Docket No. 53.)

**II.  Parties' Positions**

　　**A.　Florentino**

　　　　Florentino moves for acquittal on the basis of
insufficient evidence.  (Docket No. 55 at pp. 1-3.)  According to
Florentino, "the government . . . presented insufficient evidence
to prove beyond a reasonable doubt [Florentino's] subjective
intent as required by [De León, 270 F.3d 90]."  <u>Id.</u> at p. 1.
Florentino offers that the crime of attempting to reenter the
United States after removal or deportation in violation of 8 U.S.C.
section 1326 requires the government to prove a defendant's
subjective intent to reenter the United States.  <u>Id.</u> at p. 1

(citing De León, 270 F.3d at 92).   Florentino notes that the government relies on his "substantial step" of boarding a vessel headed to Puerto Rico as proof of subjective intent, and suggests that this is insufficient.   Id. at p. 2.

Florentino alternatively moves for a new trial.   Id. at pp. 3-4.   He seems to offer three reasons.   First, he thinks the Court erred in denying his requested jury instructions on specific intent and the hierarchy of Model Penal Code mental states.   Id. at p. 3.   Second, he thinks the Court erred in denying his requested jury instruction on "duress/necessity."   Id.   Third, he thinks the Court should have admitted as evidence his petition for asylum.   Id. at pp. 3-4.

### B. Government

The government opposes Florentino's motion.   (Docket No. 56.)   According to the government, section 1326 requires the government to prove an intent to enter the United States.   Id. at p. 3.   That element and the other elements, the government argues, were proved with sufficient evidence.   Id. at pp. 3-5.   The government also contends that there is no basis for a new trial based on the Court's rejection of Florentino's requested jury instructions.   Id. at p. 5.

## III. Discussion

### A.    Sufficiency of the Evidence

#### 1.    Applicable Law

A court may set aside a jury's guilty verdict and enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.  See Fed. R. Crim. P. 29(c).  The burden of making the requisite showing falls on the defendant.  United States v. Polanco, 634 F.3d 39, 45 (1st Cir. 2011).

A challenge to the sufficiency of the evidence challenge is "a tough sell," id., "an uphill battle," United States v. Pérez-Meléndez, 599 F.3d 31, 40 (1st Cir. 2010) (internal quotation marks omitted), and a "daunting hurdle[]," United States v. Hatch, 434 F.3d 1, 4 (1st Cir. 2006) (internal quotation marks omitted).  Courts uphold a jury's guilty verdict "unless the evidence is so scant that a rational factfinder could not conclude that the government proved all the essential elements of the charged crime beyond a reasonable doubt."  United States v. Vázquez-Soto, 939 F.3d 365, 371 (1st Cir. 2019) (internal quotation marks omitted). The jury's verdict will stand if it "finds support in a plausible rendition of the record," as courts "need not believe that no verdict other than a guilty verdict could sensibly

be reached." United States v. Shaw, 670 F.3d 360, 362 (1st Cir. 2012) (internal quotation marks omitted).

Section 1326 of Title 8 of the United States Code criminalizes entry, attempted entry, and being found in the United States of aliens who have been deported from the United States and lack express permission from the Attorney General to reapply for admission to the country.  8 U.S.C. § 1326(a).  Specifically, the statutory provision states that

> any alien who—
>
> (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>
> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
>
> shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Id.  Entering, attempting to enter, and being found in the United States are three different points in time at which section 1326 can be violated.  United States v. De León, 444 F.3d 41, 52 (1st Cir. 2006).

The crime of attempted reentry requires the government to prove four elements. <u>Cabral</u>, 252 F.3d at 522-23. These are

> (1) that [the defendant] was an alien at the time of the alleged offense;(2) that he had previously been arrested and deported; (3) that he attempted to enter the United States; [and] (4) that he had not received the express consent of the Attorney General of the United States to apply for readmission to the United States since the time of his previous arrest and deportation.

<u>Id.</u>; <u>see</u> <u>DeLeón</u>, 444 F.3d at 53.

In a line of cases, the First Circuit Court of Appeals has considered whether the crime of attempted reentry in violation of section 1326 requires proof of specific intent. Before treading into that caselaw, however, the Court takes a step back to review the concepts of specific intent and general intent. The Court also considers the circuit split on the issue at hand.

The terms "specific intent" and "general intent" in criminal law have had many meanings over time. <u>See</u> Robert Batey, <u>Judicial Exploitation of Mens Rea Confusion, at Common Law and Under the Model Penal Code</u>, 18 Ga. St. Univ. L. Rev. 341, 367-99 (2001) [hereinafter Batey]. The United States Supreme Court reviewed some of these meanings in <u>Bailey</u>, 444 U.S. at 403.

Generally, the difference between specific intent and general intent concerns a defendant's state of mind. A crime or element of a crime which "requires only that the defendant

reasonably knew the proscribed result would occur" is a general intent crime or element, while a crime or element requiring "that the defendant specifically intended such an outcome as his purpose" is a specific intent crime or element. United States v. Dyer, 589 F.3d 520, 528 (1st Cir. 2009). Judge Torruella recently emphasized the distinction, explaining that general intent "requires a showing that a defendant intended to perform a certain act" and "he need not possess any intent to violate the law," while specific intent requires the government to show "that the defendant performed the offending acts with the specific purpose of producing the law's legally forbidden result, or the desired outcome of executing the *actus reus* was in fact to violate the law." United States v. Cortés-Caban, 691 F.3d 1, 34–35 (1st Cir. 2012) (Torruella, J., dissenting); see also United States v. Wells, 766 F.2d 12, 20 (1st Cir. 1985) (citation and internal quotation marks omitted) ("Willfulness means committed voluntarily and with the purpose of violating the law, and not by mistake, accident or in good faith.  Willfulness means having the specific intent to do something the law forbids; a general intent to commit the proscribed act is not enough."). Consequently, "[i]n a general sense, 'purpose' [as that term is used in the Model Penal Code] corresponds loosely with the common-law concept of specific intent, while 'knowledge' [as used in the Model Penal Code]

corresponds loosely with the concept of general intent." Bailey, 444 U.S. at 405.

The circuit courts of appeal have generally agreed that entering or being found in the country in violation of section 1326 is a general intent crime. See United States v. Carlos-Colmenares, 253 F.3d 276, 277 (7th Cir. 2001) (collecting cases); Soto, 106 F.3d at 1041. So, to convict a defendant of entering or being found in the country, the government needs to prove intent to reenter, but does not need to prove intent to reenter without the Attorney General's express consent. Carlos-Colmenares, 253 F.3d at 278.

Attempt to reenter in violation of section 1326, however, is a different story. There is a circuit split concerning whether attempted illegal reentry pursuant to section 1326 is a specific intent or general intent crime. See Kurtis A. Kemper, Annotation, Illegal Reentry Under § 276 of Immigration and Nationality Act (8 U.S.C.A. § 1326) of Alien Who Has Been Denied Admission, Excluded, Deported, or Removed or Has Departed United States While Order of Exclusion, Deportation, or Removal Is Outstanding, 177 A.L.R. Fed. 459, § 14[a]–[b] (2002).

In the Ninth Circuit, the government must prove that a defendant intended an illegal reentry. See United States v. Vázquez-Hernández, 849 F.3d 1219, 1225 (9th Cir. 2017);

Gracidas-Ulibarry, 231 F.3d at 1196.   According to the Ninth

Circuit Court of Appeals, the government must prove, among other

things, that "the defendant had the purpose, i.e., conscious

desire, to reenter the United States without the express consent

of the Attorney General."  Gracidas-Ulibarry, 231 F.3d at 1196.

The Gracidas-Ulibarry court reasoned that section

1326 reflects the common law meaning of the word "attempt," namely,

"the specific intent to engage in criminal conduct and an overt

act which is a substantial step towards committing the crime."

Id. at 1192, 1194 (alteration and internal quotation marks

omitted).   The common law meaning of attempt, according to the

Gracidas-Ulibarry court, aims "to resolve the uncertainty whether

the defendant's purpose was indeed to engage in criminal, rather

than innocent, conduct." Id. at 1193.  The Gracidas-Ulibarry court

explained,

> [T]he common law justification for requiring specific
> intent for an attempt crime appears applicable to
> attempted illegal reentry; otherwise, lawful conduct
> could be swept within the proscription of the statute.
> For example, a person who has been deported from the
> United States is authorized, within a specified period
> after deportation, to request permission at a port of
> entry to reapply for admission into the United States.
> Moreover, certain forms for waivers from the Attorney
> General to allow deported persons to return lawfully to
> the United States are located and processed at ports of
> entry.   If attempted illegal reentry were a general
> intent crime, a previously deported alien intercepted on
> the way to, or even at, the port of entry to make such
> a request or to pick up the forms could be prosecuted

under § 1326.  True, the alien could try to explain that his or her intent was to comply with the law, not violate it; but the government would not have to prove beyond a reasonable doubt that the alien's true purpose was to break the law.

Id. at 1194 (citations omitted).

Consequently, in the Ninth Circuit, an asylum petition may be relevant to prosecution pursuant to section 1326. An alien would not be "attempting to reenter the [United States] without permission" in violation of section 1326 by "approach[ing] a port of entry to seek asylum." United States v. Valdez-Novoa, 780 F.3d 906, 923 (9th Cir. 2015).

Other circuits, by contrast, take a different view of section 1326.  In these circuits, the government must only prove that the defendant intended entry into the United States; the government need not prove that the defendant intended an illegal entry.  See, e.g., United States v. Rodríguez, 416 F.3d 123, 128 (2d Cir. 2005); United States v. Morales-Palacios, 369 F.3d 442, 449 (5th Cir. 2004).

In Rodríguez, the Second Circuit Court of Appeals found reasons to diverge from the Ninth Circuit Court of Appeals. The Rodríguez court explained that, because section 1326 states a statutory offense rather than a common law offense, the words are liberated from their common law meanings and congressional intent controls.  416 F.3d at 126.  With the plain language and

legislative history lacking an indication that Congress meant to impose a specific intent requirement for attempted reentry, the Rodríguez court turned to legislative purpose. Id. at 127. The Rodríguez court stated that the legislative purpose—"to attach significant risk to reentry after deportation"—"would be obstructed by the imposition of a heightened *mens rea* standard in attempt prosecutions." Id. Finally, the Rodríguez court discounted the view that a heightened *mens rea* requirement for attempted reentry is necessary to separate guilty from innocent conduct because, "[b]y virtue of their prior deportation, those subject to § 1326 already have knowledge of the specific legal duties imposed by the statute." Id. at 128.

    In United States v. Reyes-Medina, No. 94-1923, 1995 WL 247343, at *1 (1st Cir. Apr. 25, 1995) (per curiam), a defendant was convicted of attempted reentry into the United States in violation of section 1326. The defendant was arrested at an airport in Puerto Rico after leaving a flight from the Dominican Republic. Id. The defendant argued that the evidence was insufficient to sustain his conviction because, *inter alia*, the government did not prove that he intended to enter the United States. Id. According to that defendant, "[b]ecause he did not realize that entering Puerto Rico is tantamount to entering the

United States, . . . he lacked the necessary criminal intent."
Id.

        The Reyes-Medina court rejected the argument.  The
Reyes-Medina court first noted that "[a]n overwhelming majority of
other circuits to decide this issue have held that the government
need not prove that a defendant had specific intent to violate the
statute; all that is required is that a defendant enter or attempt
to enter the United States voluntarily."  Id.  The Reyes-Medina
court then explained that, "[a]lthough it is true that many people
do not realize that Puerto Rico is a [United States] possession,
the sincerity or reasonableness of [the defendant's] beliefs are
irrelevant."  Id. at *2.  The Reyes-Medina court further stated
that, "[e]ven assuming that such a defense were available, there
was sufficient evidence for the jury to find that Reyes knew that
he was entering the United States."  Id.  The defendant had
previously visited Puerto Rico and passed through customs, so the
jury was entitled to infer that he knew "entering Puerto Rico was
tantamount to entering the United States."  Id.

        The opinion in Reyes-Medina is of limited utility
to this Court.  The opinion is unpublished, indicating that the
panel did not see precedential value in the opinion.  See First
Circuit Court of Appeals R. 36.0(c).  For what it is worth,
however, the Reyes-Medina court did indicate that proving a

violation of section 1326 does not depend on showing that the defendant intended an illegal result. 1995 WL 247343, at *2. And the opinion is useful insofar as it explains the type of evidence which can be sufficient to show intent to enter the United States. Id.

The next case of interest is Soto, 106 F.3d at 1041. There, a previously deported defendant obtained a visa and reentered the United States without permission of the Attorney General. Id. In a prosecution for violation of section 1326, the defendant argued that the district court erred in failing to instruct the jury that good faith in entering the country was a defense to a section 1326 prosecution. Id.

The Soto court disagreed. Id. The Soto court noted that, at the time, only one circuit court of appeals required the government to prove specific intent, and the dissenting judge in that case had the more persuasive opinion. Id. (discussing United States v. Anton, 683 F.2d 1011 (7th Cir. 1982), overruled by Carlos-Colmenares, 253 F.3d 276).

The opinion in Soto is not directly on point. It concerns a defendant who actually reentered the United States, not a defendant who attempted reentry. The following case, however, concerning an attempted reentry, points to Soto.

In Cabral, 252 F.3d at 522, the defendant presented an invalid alien registration card at an immigration booth in the airport in Puerto Rico.  He was convicted of attempted reentry in violation of section 1326.  Id. at 521-22.

The question in Cabral was "whether the evidence supports a finding that [the defendant] attempted to re-enter illegally into the United States."  Id. at 523.  The defendant contended that he did not intend to reenter the United States but rather to ask for permission at the port of entry.  Id.

The Cabral court found that the evidence contradicted the defendant's contention.  Id.  The Cabral court said that the defendant "sought to pass himself off as a legal resident by making a false claim of residency at the port of entry."  Id.  The Cabral court labeled "disingenuous" the idea that the defendant planned to ask for permission at the port of entry.  Id.

The Cabral court concluded that the defendant's "actions at the port of entry show that he attempted to deceive the immigration authorities into allowing him to re-enter the country."  Id.  According to the Cabral court, the defendant knew that he needed permission from the Attorney General and knew or should have known that his alien registration card was invalid.  Id.  As such, said the Cabral court, "[t]he evidence amply supports

the jury's finding that [the defendant] attempted to re-enter the United States in violation of 8 U.S.C. § 1326." Id. at 524.

The Cabral court then turned to another of the defendant's contentions, namely, "that the government was required to prove that he had a specific intent to re-enter the United States, and, as a corollary, that the district court should have instructed the jury on specific intent as an element of the offense." Id. The Cabral court observed that the "argument that § 1326 contains a specific intent requirement has not been well received by the courts." Id. The Cabral court then stated, "Even if we decided to entertain the specific intent issue (which appears to have been squarely rejected by the Soto Court in any event), the evidence here is sufficiently strong to support a finding that [the defendant] specifically intended to re-enter the United States." The Cabral court concluded that "the decision not to instruct the jury on specific intent as an element of the offense[] was proper." Id.

The Cabral court appears to reject the idea that a defendant must intend an illegal entry to violate section 1326. The Cabral court found an intent to reenter the United States in spite of the defendant's argument that he merely planned to ask permission at the port of entry. The Cabral court then spurned the notion that the government must prove specific intent to

reenter the country, which seems, although not expressly set out in the opinion, to be a rejection of a requirement to show intent to illegally enter.

The issue of whether attempted illegal reentry requires proof of specific intent to enter the country illegally was most clearly addressed in De León, 270 F.3d at 92.  There, the defendant was found on a boat off the coast of Puerto Rico.  Id. at 91.  According to the De León court,

> "Attempt," here as elsewhere, is a specific intent crime in the sense that an "attempt to enter" requires a subjective intent on the part of the defendant to achieve entry into the United States as well as a substantial step toward completing that entry.  However, as with most federal criminal statutes, there is no requirement that the defendant additionally know that what he proposes to do—i.e., attempt to enter the United States—is for him criminal conduct.

Id. at 92 (citation omitted).

Therefore, the De León court's view of the attempt element in section 1326 involves specific intent to enter the United States, but not specific intent to do so illegally.  Id. In this way, the De León court's view of section 1326 tracks that of the Second Circuit Court of Appeals in Rodríguez, 416 F.3d at 128.

The De León court proceeded to examine whether the evidence in the case was sufficient to prove specific intent to enter the country.  Id.  The De León court explained that

>the evidence was ample to show that [the defendant] was
>on a vessel seeking to make a surreptitious entry into
>the United States, and—given the state and behavior of
>the vessel and the statements of other passengers—it is
>easy to infer that [the defendant] knew full well where
>he was headed and was on board for that purpose.

Id.

Finally, a comment to the pattern jury instructions relies on the De León court's view of section 1326. According to the comment, "attempt 'is a specific intent crime in the sense that an "attempt to enter" requires a subjective intent on the part of the defendant to achieve entry into the United States as well as a substantial step toward completing that entry.'" Pattern Instructions at 78 (quoting De León, 270 F.3d at 92).

To be sure, the First Circuit Court of Appeals has at times framed the test for conviction pursuant to section 1326 in a manner suggesting it follows the view taken by the Ninth Circuit Court of Appeals in Gracidas-Ulibarry, 231 F.3d at 1196. For instance, the First Circuit Court of Appeals stated that, "[t]o secure a conviction under 8 U.S.C. § 1326, the government must prove that the defendant: (1) is an alien, (2) was previously deported, and (3) thereafter entered, or attempted to enter, the United States without permission." United States v. Contreras-Palacios, 492 F.3d 39, 42 (1st Cir. 2007); see United States v. García, 452 F.3d 36, 43 (1st Cir. 2006). By lumping together

attempted entry with a lack of permission, one might argue that the court was suggesting that a defendant must intend an illegal entry.  That issue, however, was not even broached in those opinions.

Taking the caselaw and pattern jury instructions together, in the First Circuit, proving attempted reentry in violation of section 1326 requires proof of a purpose to enter the United States but does not require proof of intent to do so illegally.

## 2.  Analysis

There was sufficient evidence to convict Florentino of attempted reentry in violation of section 1326.  The Court addresses each element.

First, the evidence was sufficient for a rational factfinder to conclude that Florentino was an alien.  One month before his arrest in this case, Florentino had a passport from the Dominican Republic and told law enforcement authorities that he is a citizen of the Dominican Republic.  After his arrest in this case, he again confirmed to law enforcement authorities that he is a citizen of the Dominican Republic.

Second, the evidence sufficiently showed that Florentino was previously deported.  In September 2019, Florentino

was stopped at an airport, given a document explaining that he was being removed, and deported to the Dominican Republic.

The third element is where Florentino has concentrated his fire during this case. Here too, however, the evidence was sufficient. Florentino paid $2000 to get to the United States. He was found on a boat headed to Puerto Rico, and he knew that Puerto Rico is part of the United States. The boat was covered in a blue tarp and had other characteristics of boats used for drug smuggling. It was also overloaded. He wanted to come to the United States so that he could earn money to build a house in the Dominican Republic. That evidence is more than sufficient to show intent to enter the United States.

As noted, the government was not required to prove intent to illegally reenter the United States. There is, therefore, no need to consider whether other evidence—including Florentino's earlier acknowledgment as to the reasons for his deportation, his admission after his arrest that he had no pending petitions to enter or remain in the United States, and his application for asylum after his arrest—are sufficient to show such intent.

Fourth, the evidence was sufficient to show he did not have the proper permission to apply for readmission to the United States. Law enforcement learned, through investigation and

Florentino's own confirmation, that Florentino had no pending petitions to enter or remain in the United States.  Florentino further acknowledged that he had previously applied for a visa but had been denied.

**B.   New Trial**

**1.   Applicable Law**

Pursuant to Rule 33(a), a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The remedy of a new trial must be used sparingly, and only where a miscarriage of justice would otherwise result." United States v. Del-Valle, 566 F.3d 31, 38 (1st Cir. 2009) (internal quotation marks omitted).  "[T]he ultimate test for granting a new trial . . . is whether letting a guilty verdict stand would be a manifest injustice." United States v. Veloz, 948 F.3d 418, 437 (1st Cir. 2020) (internal quotation marks omitted).  In making this determination, a court "may weigh the evidence and evaluate the credibility of witnesses." United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001) (internal quotation marks omitted).

"In a federal criminal trial, the Fifth Amendment's guarantee of due process of law requires the government to prove beyond a reasonable doubt every element of the offense for which the defendant is charged." United States v. Latorre-Cacho, 874

F.3d 299, 302 (1st Cir. 2017).  "Thus, jury instructions may
violate a defendant's constitutional right to due process if they
relieve the government of its obligation to meet that requirement."
Id.

           "At the same time, 'not every ambiguity,
inconsistency, or deficiency in a jury instruction rises to the
level of a due process violation.  The question is whether the
ailing instruction so infected the entire trial that the resulting
conviction violates due process.'"  Id. (quoting Middleton v.
McNeil, 541 U.S. 433, 437 (2004)).  "A jury instruction thus
violates the Constitution for failing to properly instruct the
jury regarding the elements of an offense only when 'there is a
reasonable likelihood that the jury has applied the challenged
instruction in a way that violates the Constitution.'"  Id.
(quoting Middleton, 541 U.S. at 437).

           If a district court errs in stating the elements of
an offense, the "task is to determine whether . . . the
instructions in their entirety—and in the context of the evidence—
presented the relevant issues to the jury fairly and adequately."
Id. at 303 (internal quotation marks omitted).  For errors of
constitutional dimension, "the government . . . [must] prove
beyond a reasonable doubt that the error did not influence the
verdict."  United States v. Sasso, 695 F.3d 25, 29 (1st Cir. 2012).

For errors that are not of constitutional dimension, "a conviction . . . [can] stand, error notwithstanding, as long as it can be said with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Id. (internal quotation marks omitted).

A defendant may request jury instructions. Fed. R. Crim. P. 30(a). "A defendant is 'entitled to an instruction on his theory of defense so long as the theory is a valid one and there is evidence in the record to support it.'" United States v. Peake, 804 F.3d 81, 98 (1st Cir. 2015) (quoting United States v. McGill, 953 F.2d 10, 12 (1st Cir. 1992)).

A district court's refusal to issue a requested jury instruction requires a new trial if "the evidence, taken in a light most favorable to the defendant, supports the instruction" and then "only if the instruction (1) is substantively correct; (2) was not substantially covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense." United States v. Berroa, 856 F.3d 141, 160 (1st Cir. 2017); United States v. González-Pérez, 778 F.3d 3, 15 (1st Cir. 2015) (internal quotation marks omitted); see United States v. McDonough, 727 F.3d 143, 156–

57 (1st Cir. 2013); United States v. Baird, 712 F.3d 623, 627-28 (1st Cir. 2013). "Under the third requirement, reversal is not required unless a defendant suffers substantial prejudice." González-Pérez, 778 F.3d at 15 (internal quotation marks omitted).

Defendants are not entitled to mandate the phrasing of jury instructions. United States v. Goris, 876 F.3d 40, 46-47 (1st Cir. 2017). "[T]he district court's choice of phrase is largely a matter of discretion" so long as the instructions, "taken as a whole, [do not] show a tendency to confuse or mislead the jury with respect to the applicable principles of law." Id. (internal quotation marks omitted).

Finally, on review of a motion for a new trial, a court may evaluate whether its evidentiary rulings at trial were correct. See Wilkerson, 251 F.3d at 279-80. A new trial is appropriate if an evidentiary ruling was erroneous and not harmless. Id.

### 2. Florentino's Requested Jury Instructions on Specific Intent and the Hierarchy of Mental States

Florentino contends that the Court's instructions were deficient for failure to include his requested jury instructions on specific intent and the hierarchy of mental states. As he puts it, "the lack of jury instructions requested denied [Florentino] a fair trial, and denied his jury proper instructions

on the theor[y] of the defense on 'specific intent.'" (Docket No. 55 at p. 3.)

Although Florentino does not make the argument, it is apparent that the Court's instructions placed too high a burden on the government. Section 1326, as discussed above, requires the government to prove an intent to enter the United States but does not require an intent to illegally enter the United States. See Rodríguez, 416 F.3d at 126–28; De León, 270 F.3d at 92; Cabral, 252 F.3d at 523–24; Reyes-Medina, 1995 WL 247343, at *1–2. The natural reading of the Court's instructions, however, required the government to prove intent to illegally enter. See generally United States v. Wright, 937 F.3d 8, 29 (1st Cir. 2019) (using a jury instruction's natural reading). The Court instructed the jury that the government had to prove beyond a reasonable doubt "that the defendant intended to commit the crime of re-entering the United States without permission from the United States' authorities." (Docket No. 51 at p. 16.) The Court also stated that "[t]o act 'intentionally' or 'willfully' means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed -- that is to say, with a bad purpose, either to disobey or disregard the law – not to act by ignorance, accident or mistake." Id. at p. 18.

This error does not call for a new trial.  For one thing, Florentino does not dispute the Court's instructions on this score.  See United States v. Morosco, 822 F.3d 1, 20-21 (1st Cir. 2016) (describing as "interesting" an argument that a jury instruction "actually required prosecutors to prove 'a level of *mens rea*' higher than what the statute demands" but explaining that "the only *mens-rea* issue relevant here is the one [the defendant] raises").

Secondly, the Court's instruction placed a higher burden on the government than was required by law.  Courts have held that similar instructional errors are not cause for a new trial.  For example, in United States v. López-Cotto, 884 F.3d 1, 12 (1st Cir. 2018), a case involving plain error review, the court noted that the defendant's substantial rights were not violated by a jury instruction that increased the government's evidentiary burden.  In Chroniak v. Golden Investment Corp., 983 F.2d 1140, 1148 (1st Cir. 1993) (footnote omitted), the court said that "the failure to give a 'specific intent' instruction was 'harmless' error at most; at best, the jury instruction amounted to beneficial error, as it placed on the plaintiff a more difficult burden of proof."

A somewhat different issue arose in United States v. Pagán-Romero, 894 F.3d 441, 449 (1st Cir. 2018), where the court

held that the district court did not abuse its discretion by
providing a dictionary to the jury to ascertain the definition of
the word "knowingly" because, in part, "the dictionary offered no
alternate definition of 'knowingly' that was less favorable to
Appellant, or more favorable to the government, than the definition
contained in the instructions." The Pagán-Romero court said, "[i]n
other words, even if the jurors had used the dictionary's
definition of 'knowingly,' Appellant would have been no worse off."
Id.

     Here, Florentino benefitted, or at least suffered
no harm, from jury instructions that increased the government's
burden. The government was not relieved of its burden to prove an
element of the offense, since proving intent to illegally enter
the country requires proof of intent to enter the country. The
error was therefore not of constitutional dimension and, whatever
its dimension, was harmless. Latorre-Cacho, 874 F.3d at 302;
Wright, 937 F.3d at 29-30; Sasso, 695 F.3d at 29.

     That analysis is germane to determining whether the
refusal of Florentino's requested instruction on specific intent
requires a new trial. Recall that Florentino wanted an instruction
quoting De León—he asked the Court to instruct the jury that
attempted reentry of the United States "is a specific intent crime
in the sense that an 'attempt to enter' requires a subjective

intent on the part of the defendant to achieve entry into the
United States as well as a substantial step toward completing that
entry." (Docket No. 36, Ex. 1 at p. 1.) Florentino's requested
instruction, then, would have placed the lower burden on the
government.

        The Court's refusal of Florentino's requested
instruction on specific intent does not require a new trial. Since
proving intent to illegally enter requires proof of intent to
enter, Florentino's requested instruction was "substantially
covered in the charge actually delivered to the jury." Berroa,
856 F.3d at 160; González-Pérez, 778 F.3d at 15; McDonough, 727
F.3d at 156-57; Baird, 712 F.3d at 627-28. Moreover, because the
government was required to overcome a higher burden than Florentino
requested, the failure to give Florentino's requested instruction
did not "seriously impair[] the defendant's ability to effectively
present a given defense" and Florentino did not "suffer[]
substantial prejudice." Berroa, 856 F.3d at 160; González-Pérez,
778 F.3d at 15; McDonough, 727 F.3d at 156-57; Baird, 712 F.3d at
627-28.

        Of course, throughout this proceeding, Florentino
seems to have believed that his requested instruction on specific
intent (taken from De León) would have provided that his reasons
for seeking asylum negate the specific intent required by his

requested instruction.  For the reasons extensively discussed in this opinion, however, he is, quite simply, wrong.  An asylum seeker may lack the intent to illegally enter the United States. Valdéz-Novoa, 780 F.3d at 923; Gracidas-Ulibarry, 231 F.3d at 1193–96.  The same is not true, however, for an intent to enter the country.  See Rodríguez, 416 F.3d at 126–28; De León, 270 F.3d at 92; Cabral, 252 F.3d at 523–24; Reyes-Medina, 1995 WL 247343, at *1–2.

Florentino also requested an instruction on the hierarchy of mental states.  (Docket No. 36, Ex. 1 at p. 2.)  This instruction was properly rejected for a number of reasons.

First, it is not substantively correct.  The requested instruction would have broadly told the jury that "[t]he definition of 'intent' has been replaced with a hierarchy of culpable states of mind" identified as "purpose, knowledge, recklessness, and negligence."  Id.  The requested statement does not describe federal law at issue here.  See, e.g., United States v. García-Jiménez, 807 F.3d 1079, 1086 (9th Cir. 2015) ("[T]he Model Penal Code, while a helpful tool in the categorical analysis, does not dictate the federal generic definition of a crime."); Batey, 18 Ga. St. U. L. Rev. at 341 (explaining that the federal system continues to apply the *mens rea* framework developed by the common law as opposed to the framework reflected in the Model Penal

Code).  The United States Supreme Court has noted that ambiguities in the common law approach have led to a movement toward the Model Penal Code approach, Bailey, 444 U.S. at 403-04, and courts see the Model Penal Code as persuasive authority in the interpretation of statutory crimes, United States v. U.S. Gypsum Co., 438 U.S. 422, 444 (1978), but the mental state required to violate federal statutory criminal law remains a matter of congressional intent, Rehaif v. United States, 139 S. Ct. 2191, 2195 (2019); United States v. Balint, 258 U.S. 250, 253 (1922).  The case on which Florentino relies in support of the requested instruction, Bailey, actually explains that the terms specific intent and general intent "correspond[] loosely" with the Model Penal Code terms purpose and knowledge.  444 U.S. at 405.  Florentino points to no authority that congressional intent for section 1326, much less the entire federal criminal code, was to replace the definition of intent with the Model Penal Code's hierarchy of culpable states of mind. See Docket No. 36 at pp. 2-3; id., Ex. 1 at p. 2; Docket No. 47; Docket No. 55.  Indeed, the First Circuit Court of Appeals continues to define "specific intent" and "general intent."  See Dyer, 589 F.3d at 528.

Second, Florentino's requested jury instruction on the hierarchy of mental states was a road to nowhere.  Florentino would have given the jury a list of four states of mind, provided

it with definitions of two, and left the jury to figure out how all of that applied to the case.  See Docket No. 36, Ex. 1 at p. 2. The requested instruction did not even tell the jury which mental state applied.  See id.

It is also notable that, taken together, Florentino's first two requested instructions were confusing. Florentino wanted the jury to be told that the government must prove he had a "subjective intent . . . to achieve entry into the United States" and then, in the next breath, that the definition of intent had been replaced with a hierarchy of culpable states of mind.  (Docket No. 36, Ex. 1 at pp. 1-2.)  Rather than "furnish[ing] a set of directions composing . . . the proper legal standards to be applied by lay jurors in determining the issues that they must resolve in a particular case," Goris, 876 F.3d at 46 (internal quotation marks omitted), Florentino's requested instructions would have muddled the issues.

Third, the Court accomplished the goal that Florentino appears to have been targeting with the instruction on the hierarchy of mental states.  Before trial, in a somewhat abstruse fashion, Florentino told the Court that he wanted the instruction out of concern that the jury would not properly understand that the government had to prove a purpose to enter the United States.  (Docket No. 47 at pp. 2-3.) Florentino stated,

> Neither the Jury Instruction #10 (Essential Elements of the Offense) nor Jury Instruction #11 (Attempt) properly instruct the jury about the distinction between purpose and knowledge as discussed in Bailey, supra. The burden on the level of *mens rea* applicable is higher that [*sic*] a simple attempt case; it is part of the Defense's theory of the case that [Florentino's] conduct does not reach that level of *mens rea*, and therefore, proper jury instructions are necessary. It is because of this recognized problem of possible confusion and improper jury instruction that we submitted and requested that the jury be instructed in accordance with De León and Bailey, as per the Defense Jury Instructions #1 and #2 filed at Docket Number 36.

Id. The Court addressed those concerns by instructing the jury on the government's burden to prove that Florentino had a bad purpose. The Court instructed the jury that "the government must prove . . . that the defendant intended to commit the crime of re-entering the United States," and further defined acting intentionally as "act[ing] voluntarily and intelligently and with the specific intent that the underlying crime be committed -- that is to say, with a bad purpose, either to disobey or disregard the law -- not to act by ignorance, accident or mistake." (Docket No. 51 at pp. 16, 18.)

### 3.  Jury Instruction on Duress

Florentino's requested duress instruction was properly denied because he failed to present evidence supporting the instruction. Berroa, 856 F.3d at 160; Lebreault-Feliz, 807 F.3d at 3-5; González-Pérez, 778 F.3d at 14-15; McDonough, 727

F.3d at 156–57; Baird, 712 F.3d at 627–28.  Florentino offered nothing but legal argument in support of the instruction.  See Docket No. 44 at pp. 3–8; Docket No. 36 at p. 3.  Florentino's asylum petition has been available to the Court because it was attached to the government's motion to exclude the duress instruction.  (Docket No. 39, Ex. 2 at pp. 9–27.)  The asylum petition, however, did not enable Florentino to meet his burden.[1]

In the asylum petition, Florentino describes a threat to his life from local gang members in June 2018.  Id. at p. 14.  One of the gang members cut Florentino's forearm with a machete and Florentino had to receive medical attention at a hospital.  Id.  Afterwards, Florentino states, he went into hiding for approximately one year.  Id.  He came to the United States in May 2019 and was apprehended in September 2019.  See id.  After being removed to the Dominican Republic, Florentino says, the death threats from the local gang resumed.  Id.  So, according to Florentino, he spent a month preparing to return to the United States.  Id. at p. 17.  He was arrested in October 2019 attempting to reenter the United States.  Id.

---

[1] Of course, the Court is not deciding the merits of Florentino's asylum petition.  A criminal trial for attempted illegal reentry after deportation in violation section 1326 is not the proper forum to decide—or argue—a case for political asylum.  See United States v. Polanco-Gómez, 841 F.2d 235, 238 (8th Cir. 1988).

The circumstances described in the asylum petition, even in the light most favorable to Florentino, are "insufficient as a matter of law to create a triable issue" on the duress defense. Lebreault-Feliz, 807 F.3d at 4 (internal quotation marks omitted). First, the circumstances described in the asylum petition do not sufficiently show imminent or immediate harm. See id. at 3–4. The death threats in June 2018 and September 2019 were quite a long time before Florentino's attempted reentry into the United States in October 2019. See id. (holding that defendant made insufficient showing of imminent harm where six months passed between incident and violation of law, and collecting cases where a lapse of minutes and hours supported finding of no imminence).

Second, Florentino's asylum petition fails to show a lack of reasonable opportunity to escape or frustrate the threat and an absence of reasonable alternatives to violating the law. Lebreault-Feliz, 807 F.3d at 4. Florentino admits to spending a month preparing to reenter the United States, but offers no reason why illegally reentering the United States was the only means to escaping or frustrating the threat. For instance, Florentino might have chosen to go back into hiding, a strategy he acknowledges worked for almost a year. Florentino states that the threats came from a local gang, leaving open still other possibilities like moving to another part of the Dominican Republic, emigrating to

another country, applying to the Attorney General for permission
to enter the United States, or some combination of those
alternatives.   Courts have held duress claims unavailable in
similar circumstances.  United States v. Bonilla-Siciliano, 643
F.3d 589, 591 (8th Cir. 2011); United States v. Polanco-Gómez, 841
F.2d 235, 238 (8th Cir. 1988); United States v. Fashola, No. 94-
5769, 1995 WL 686329, at *2 (4th Cir. Nov. 20, 1995); United States
v. Crown, Crim. No. 99-1044, 2000 WL 709003, at *2-3 (S.D.N.Y.
May 31, 2000).

### 4.   Exclusion of Petition for Asylum

Evidence is relevant if "it has any tendency to
make a fact more or less probable than it would be without the
evidence" and "the fact is of consequence in determining the
action."   Fed. R. Evid. 401.   "Irrelevant evidence is not
admissible." Id. R. 402.  "The court may exclude relevant evidence
if its probative value is substantially outweighed by a danger
of . . . unfair prejudice, confusing the issues, [or] misleading
the jury . . . ." Id. R. 403.

Florentino's asylum petition is irrelevant.   Any
fact it may make more or less probable was not of consequence in
determining his guilt.  Florentino petitioned for asylum after he
was arrested for attempted reentry.  See Docket Nos. 6, 36.  And
section 1326 does not require the government to prove attempted

illegal reentry, Rodríguez, 416 F.3d at 126-28; De León, 270 F.3d
at 92; Cabral, 252 F.3d at 523-24; Reyes-Medina, 1995 WL 247343,
at *1-2, so the fact that Florentino now claims he intended an
entry pursuant to asylum is irrelevant.  Courts in this circuit
have held that similar documents are not relevant evidence in a
section 1326 prosecution.  See, e.g., United States v. Vasconcelos,
71 F. App'x 863, 867 (1st Cir. 2003) (affirming decision in which
"[defendant's]   attorney   below   effectively   conceded,   and   the
district  court  agreed,  that  [a  petition  for  lawful  permanent
resident status and an application for replacement of a lost alien
registration receipt card] attached to his motion to withdraw his
guilty plea did not establish his citizenship or any other valid
defense to the charges against him."); United States v. Chun Lin
Zhang, 358 F. Supp. 3d 157, 159 (D. Mass. 2019) (holding that
application for provisional unlawful presence waiver "is not the
equivalent of receiving express consent from the Attorney General
to reapply for admission nor would it convey upon defendant any
sort of retroactive immunity.").

        Arguably, perhaps, and ignoring its late filing,
the asylum petition does make one fact of consequence more likely—
it could bolster the argument that Florentino intended to enter
the United States.  This fact, of course, cuts against Florentino,
a matter the Court raised to the defense before trial.  Yet any

such probative value on that score is substantially outweighed by the asylum petition's dangers of unfair prejudice, confusion of the issues, or misleading of the jury. Fed. R. Evid. 403. As the government argued to the Court, the asylum petition presented a risk of jury nullification. (Docket No. 39 at p. 5.)

## IV. Conclusion

For the reasons set forth above, Florentino's motion for judgment of acquittal or for a new trial, (Docket No. 55,) is **DENIED**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, May 8, 2020.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE